**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**JOSUE EMIDIO ALVARADO-HOIL,**

*Petitioner*,

v. Case No. 2:26-cv-03374-BCL-atc

**MARKWAYNE MULLIN, et al.,**

*Respondents*.

---

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

---

Petitioner Josue Emidio Alvarado-Hoil has filed a Petition for Writ of Habeas Corpus by which he challenges his immigration detention. Doc 1. The Court ordered a response from Respondent and further provided a window for Petitioner to file a reply to that response. Doc. 5. Respondent filed his opposition, Doc. 7. at 2-3, and Petitioner has now replied. Doc. 8. For the reasons that follow, the Petition is **DENIED**.

**I. The Fifth Amendment's Due Process Clause does not require that the Government bear the burden of proving that immigration detention is justified.**

Petitioner has filed this Petition despite already having received a bond hearing. The Immigration Court at that bond hearing concluded that Petitioner "failed to meet the burden as to danger"—i.e., Petitioner failed to prove that he did not pose a danger to the community and that he therefore could receive bond. The Immigration Court, in other words, put the burden on Petitioner, the immigrant. Petitioner does not dispute that the governing regulations require that

result—that he bear the burden.[1] But he has filed his Petition in this Court contending that, in placing the burden on the alien, the governing regulations violate the Fifth Amendment's due process clause. In other words, he contends that the United States Constitution imposes a rule under which the Government must bear the burden of proving the facts justifying detention pending removal proceedings.[2] The Constitution does not impose that rule.

**A.** To begin, Petitioner has identified no authority suggesting that the original public understanding of the Due Process Clause included a rule requiring the Government to bear the burden of demonstrating that detention of aliens is warranted pending removal proceedings. So, this situation is unlike, say, a criminal case in which the Supreme Court has held that a long tradition of Anglo-American law placing the burden on the Government (beyond a reasonable doubt) was baked into the concept of due process. *See In re Winship*, 397 U.S. 358, 362 (1970).

---

[1] Without elaboration, Petitioner contends that statutory law does not allocate the burden to the alien; he claims that allocation of the burden is the result of a regulation. Doc. 8 at 7. Based on that position, one would have good reason to think that principles of prudential exhaustion would apply such that Petitioner would be expected to make this argument before the Immigration Court and then the Board of Immigration Appeals: Interpretation and application of the constitution is a three-branch problem, and whatever might be said for the Board's historic reluctance to hold statutes unconstitutional, surely regulations deserve less solicitude.

But the Court does not apply administrative exhaustion here for two interrelated reasons. First, the Government has done nothing to develop this argument, offering instead only a blunt contention that administrative exhaustion should apply without addressing the Board's general unwillingness to deem unconstitutional governing law (as opposed to applications of that law). Second, the regulation in question here came from the Executive Office for Immigration Review, which might be viewed as superior to the BIA in the sense that the BIA is a component of EOIR—meaning the BIA perhaps might deem itself unable to deem the regulation unconstitutional on the same logic it sometimes has applied to statutes. Doc. 7 at 7; Doc. 8 at 7. In any event, the Government does not unpack any of this, as needed to support a prudential exhaustion argument with respect to this claim.

[2] Respondent argues that 8 U.S.C. § 1226(e) precludes review. That provision states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

That language is pretty categorical, especially the last sentence, and so one can understand why the Government would make the argument. But the Supreme Court has held that Section 1226(e) does not preclude review of constitutional challenges to the framework or procedures governing detention decisions. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (2018) (plurality opinion). Whatever its merit, this Court is bound to follow that decision. Accordingly, Section 1226(e) does not preclude review of Petitioner's claim.

Petitioner's failure to ground his argument in the Constitution's original public meaning should alone doom his claim.

**B.** Instead of grounding his argument in the Constitution's original public understanding, Petitioner grounds his argument that the Government should bear the burden of showing detention is warranted in precedent. Petitioner first identifies cases in which the Supreme Court has held the Government bears the burden when it seeks to "confine a person civilly." Doc. 8 at 7 (citing *Addington v. Texas*, 441 U.S. 418 (1979) (involuntary commitment based on mental illness); *United States v. Salerno*, 481 U.S. 739 (1987) (pretrial detention in the context of a criminal trial); *Foucha v. Louisiana*, 504 U.S. 71 (1992) (commitment due to insanity following acquittal based on same)). These cases are unhelpful here because they do not involve issues of immigration and removal. As the Supreme Court has repeatedly explained, in the context of "immigration and naturalization," the Constitution permits "rule that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003).

**C.** That leaves Petitioner to rely on the standard that the Supreme Court read into the Due Process Clause in *Mathews v. Eldridge*, 438 U.S. 319 (1976). That loose and judge-empowering test for assessing procedural due process claims, divorced from history and tradition and crafted in the context of a case involving termination of public benefits, is a poor fit for this situation: Allocation of the burden of proof is substantive and not procedural, *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199 (2014) ("[T]he burden of proof is a substantive aspect of a claim."), and (independently) in the immigration context the political branches rightly have a great deal of power that should not be curtailed through application of a malleable, judge-made and judge-empowering test. But that second consideration has apparently not dissuaded the Supreme Court, which has applied the *Mathews* test in the immigration context. *See Landon v.*

*Plasencia,* 459 U.S. 21, 34 (1982). Therefore, in an abundance of caution and in the interest of a fulsome analysis, the Court will apply the *Mathews* factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 438 U.S. at 335.

The *Mathews* test does not require that the Government bear the burden of justifying detention.

*First*, an alien's interest in freedom from detention is weighty. Even still, that interest is reduced here in two ways: (1) Petitioner is an alien facing removal proceedings, which reduces the weight accorded his liberty interest in the due process analysis, *see Miranda v. Garland*, 34 F.4th 338, 359 (4th Cir. 2022), and (2) the detention would last only during the course of removal proceedings, meaning it is time limited and therefore less obtrusive. In any event, even if the liberty interest is treated with the same weight as it has been given in other cases, including those involving American citizens or persons in non-immigration proceedings, it is here outweighed by the other *Mathews* factors.

*Second*, putting the burden on the alien is likely to *increase* accuracy. The federal government is not likely to have access to the sorts of court records (including state court records) and personal details relevant to determination of whether an alien poses a risk of flight or danger—and certainly not the sort of swift access needed to litigate a fast-moving bond determination issue; on the other hand, these details relate to the alien's own life such that the alien can more easily address them through the presentation of evidence, testimony, or both. While Petitioner suggests this "confuses the burden of production for the burden of persuasion," that formalistic response

ignores that the party bearing the burden of persuasion must, as a practical matter, introduce the evidence needed to carry that burden. And, even putting aside the alien's relative advantage in accessing and presenting proof on the issues relevant to bond, allocation of the burden should only matter in cases on the margins, such that placing the burden on the alien should not meaningfully increase the likelihood of erroneous deprivation of an alien's liberty interest pending removal proceedings in the mine run of cases.

*Third*, the Government's interest in protecting the public and the integrity and effectiveness of the removal process (by preventing flight prior to removal) is extremely weighty. *See Denko v. I.N.S.*, 351 F.3d 717, 730 (6th Cir. 2003) ("The INS has a strong interest in its procedures for accurate, efficient, and economical adjudication of immigration matters.") That is true even without a thumb on the scale, although it is worth noting the Sixth Circuit's clear directive that, given the political branch's extensive power over immigration and the judiciary's correspondingly limited role, in the immigration context the courts "should weigh heavily the government's interests in a *Mathews* ... due process determination." *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004). The Court also notes that, for reasons discussed in the preceding paragraph, placing the burden on the Government would greatly increase the fiscal and administrative burdens on the immigration authorities—burdens that would necessarily make it more difficult for those authorities to enforce the immigration laws enacted by Congress and process removals.

**D.** Finally, while it is not necessary to the bottom line, the Court notes that Petitioner's argument appears to prove too much. It is well-established that the immigration laws sometimes call for mandatory detention of some classes of aliens pending removal. *See, e.g.,* 8 U.S.C. § 1226(c) (mandatory detention of certain criminal aliens). On Petitioner's view, such mandatory detention presumably would be unconstitutional: He claims the due process clause requires the

Government to prove that detention is justified, but a mandatory detention provision relieves the Government of that burden. And yet Petitioner offers no support for the idea that mandatory detention pending removal proceedings categorically violates the Due Process Clause—underscoring that the Due Process Clause does not mandate that the Government bear the burden of justifying detention pending removal proceedings.

### II. Petitioner's other argument is moot.

Petitioner raises no other arguments in his reply. In his Petition, however, Petitioner claimed that he was entitled to an individualized bond hearing. Doc. 1 at 15-16. But Petitioner has received a bond hearing, such that this claim—if it is in fact intended to be a standalone claim—is moot.

## CONCLUSION

For the foregoing reasons, the Petition is **DENIED**. The Clerk **SHALL** close this case.

**IT IS SO ORDERED**, this 13th day of November 2026.

s/ *Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE